**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  06-CR-0086-CVE |
| | ) | |
| DEMARIO MONTEL GRAYSON, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**OPINION AND ORDER**</u>

Now before the Court for consideration is defendant's motion to suppress (Dkt. # 18).  The United States has filed a response (Dkt. # 20) and an evidentiary hearing was held.

Demario Grayson was arrested by the Tulsa Police Department on March 20, 2006, on an outstanding warrant issued by the City of Tulsa Municipal Court for failure to wear a seat belt while operating a motor vehicle.  Police conducted a search of Grayson's person following the arrest and found a small plastic bag containing tannish-colored rocks.  Grayson admitted that the rocks were a crack cocaine based substance. Grayson was indicted by a federal grand jury for possession of crack cocaine with the intent to distribute.  However, defense counsel discovered that the arrest warrant was not for Demario Grayson, but was actually for an individual named Demarco Grayson. The defendant asserts that police violated the Fourth Amendment by executing an arrest warrant on the wrong person, and that any evidence discovered after the arrest must be suppressed.  The United States argues that police had a good faith basis to arrest Grayson, even though the warrant used to arrest Grayson was for a different person, and that the exclusionary rule does not require the Court to suppress evidence.

## I.

The Special Investigation Unit of the Tulsa Police Department was conducting an investigation knows as Operation Bullet Trap.  Officer William McKenzie was performing undercover work as part of Operation Bullet Trap and he initiated contact with several suspected gang members during the ongoing investigation.  Three of the men under investigation were Grayson, Corejon Ballard and Melvin Osborne.  McKenzie checked the criminal history of each suspect using a computer database called TRACIS.  TRACIS showed that Grayson had prior felony convictions, and showed an outstanding municipal  arrest warrant for failure to appear on a charge of failing to wear a seat belt.[1]  McKenzie testified that he routinely relies on TRACIS as the only source for locating criminal histories and possible warrants.  He mentioned other possible sources for locating outstanding warrants, such as the National Crime Information Center ("NCIC") database, but NCIC would not list a municipal warrant for a traffic violation.[2]  McKenzie testified that he did not question the identity of the person listed in the municipal warrant, nor did he have any reason to doubt the accuracy of the information provided by TRACIS.

On March 20, 2006, McKenzie received a tip from a confidential informant ("CI") that Grayson was in a white car in front of Grayson's apartment building, located at 1366 E. 38th Street

---

[1]     Defense counsel discovered after this indictment that the warrant was for an individual named Demarco Grayson.  McKenzie testified that TRACIS listed the warrant under defendant's name because the computer linked the name Demarco Grayson as a possible alias for Demario Grayson.  McKenzie acknowledged that TRACIS may link a warrant to a person when the names are similar, even if the individual has never used the name as an alias.  However, a police officer would have no way to confirm the name on the warrant without locating a physical copy of the arrest warrant.

[2]     McKenzie stated that he could radio the records department of the Tulsa Police Department for information on outstanding warrants, but the records department would conduct a search using TRACIS.

2

North, Tulsa, Oklahoma.  The CI stated that Grayson had a large amount of crack cocaine and a firearm.  According to the CI, Ballard and Osborne were in the car with Grayson.  The CI informed police that he had made contact with Grayson approximately three days before and made a controlled buy of crack cocaine at Grayson's apartment.[3]   McKenzie sent investigators to the location before police arrived to confirm the accuracy of the CI's tip.  Although there was a fourth man in the car, Michael Lucas, the tip was otherwise confirmed.

Police arrived at Grayson's apartment complex at or about 4:00 p.m.  McKenzie recognized the white car because he had seen Ballard driving the car on previous occasions.  Police moved their vehicle directly behind the white car, and ordered the suspects to roll down the car windows and place their hands outside the vehicle.  The vehicle started to shake.  Ballard, sitting in the driver's seat, put his hands outside of the car window and exited the vehicle under police orders.  Lucas, located in the front passenger seat, did the same.  Osborne and Grayson both exited the vehicle through the back passenger side door.  Grayson had been seated behind the driver, so Osborne exited first, followed by Grayson.  While ordering the occupants to get out of the car, police noticed several tan rocks in plain view, which were consistent with the shape and color of crack cocaine.  As soon as the men finished exiting the vehicle, Grayson was arrested on the municipal warrant and the other three men were detained pending a search of the car.

Inside the car, police found a Ruger 9mm handgun on the hump between the rear passenger seats.  The gun was chamber loaded, with an additional 15 rounds of ammunition in the magazine.  The police report indicates that the gun would have been within the reach of both occupants of the

---

[3]      Police obtained a search warrant for Grayson's apartment but had not executed the warrant by March 20, 2006.

back seat of the vehicle (Osborne and Grayson), and that Osborne and Grayson were both convicted felons.  From the back seat police seized a cell phone and a plastic bag containing slightly more than 1.5 grams of marijuana.[4]  Police also found a plastic bag containing approximately 24 grams of crack cocaine in the front seat.  Next to the plastic bag containing the cocaine, McKenzie found a set of digital scales.

Police transported the four men to the Uniform Division North station.  On the way, Grayson stated that the gun and the drugs in the car did not belong to him, but that he did have a small amount of crack cocaine on his person.  Grayson freely offered this information to police without any interrogation.[5]  Upon arrival at the police station, Grayson removed his pants and produced a bag of crack cocaine that had been hidden in his underwear.  This crack cocaine is the basis of the instant charge of possession of a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii).

The parties stipulated at the hearing on June 28, 2006, that the warrant used to arrest Grayson was actually for a different person named Demarco Grayson.  The parties also agreed that Grayson was arrested immediately after exiting the car, and before the police saw or found the gun inside the vehicle.

## II.

The United States argues that McKenzie arrested Grayson in good faith reliance on the municipal warrant, and that evidence discovered after Grayson's arrest should not be excluded under

---

[4]     Osborne claimed that he owned the cell phone; on it police found a photo of the gun seized from the back seat hump.

[5]     Grayson executed a waiver of his Miranda rights when he arrived at the police station, and he does not argue that he made any statements to the police involuntarily.

the exclusionary rule.  If police execute a warrant which turns out to be invalid, or if police improperly execute a warrant by misinterpreting its scope, evidence will not be suppressed under the exclusionary rule if "the officer's conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment." Maryland v. Garrison, 480 U.S. 79, 88 (1987).  The test to determine whether the police unreasonably relied on a warrant to conduct a search or an arrest is an objective test, and the police must show that their failure to realize the mistake in the warrant or their execution of the warrant was objectively understandable.  Peterson v. Jensen, 371 F.3d 1199, 1203 (10th Cir. 2004).  The basis for this exception to the exclusionary rule is that:

> excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances.  Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.

United States v. Leon, 468 U.S. 897, 920 (1984) (citing Stone v. Powell, 428 U.S. 465, 540-41 (1976)).

Plaintiff relies on Hill v. California, 401 U.S. 797 (1971), which is the Supreme Court precedent most directly on point.  In Hill, police executed a search warrant for Hill's apartment. When the police arrived at the apartment, Hill was not home; however, Miller was staying at Hill's apartment and opened the door.  The police arrested Miller and refused to believe Miller's assertions that he was not Hill.[6]  The police found a gun in plain view and conducted a full search of the premises, finding other incriminating evidence linking Hill to a bank robbery.  The primary issue

---

[6]     Miller produced identification to attempt to prove his identity, but the police ignored this and continued with the search.  The Supreme Court concluded that the police officers acted in good faith by rejecting Miller's evidence of identification, as criminals often carry false identification and will claim to be someone else.

was whether the evidence discovered during the search was admissible against Hill; however, the

Supreme Court upheld the arrest of Miller, finding that even though he was arrested by mistake, the

arrest was valid as long as the police had probable cause to arrest Hill and the police officer's

reliance on the warrant to arrest Miller was reasonable.  Id. at 802-03.  The Supreme Court rejected

a test for reasonableness solely based on the officer's subjective good faith, stating:

> subjective good-faith belief would not in itself justify either the arrest or the
> subsequent search.  But sufficient probability, not certainty, is the touchstone of
> reasonableness under the Fourth Amendment and on the record before us the
> officers' mistake was understandable and the arrest a reasonable response to the
> situation facing them at the time.

Id. at 804.

In order for the rule in Hill to apply, the police must have probable cause to arrest the person

on the face of the warrant.  Mazuz v. Maryland, 442 F.3d 217, 227 (4th Cir. 2006); United States

v. De Leon-Reyna, 898 F.2d 486, 491 (5th Cir. 1990).[7]  The Tenth Circuit has cited Hill with

approval.  Glass v. Pfeffer, 657 F.2d 252 (10th Cir. 1981).  The good faith exception is narrowly

construed, and the police officer must establish that he had probable cause or reasonable suspicion

to conduct the search or arrest.  United States v. Herrera, 444 F.3d 1238, 1249 (10th Cir. 2006);

United States v. Scales, 903 F.2d 765, 770 (10th Cir. 1990).

Grayson directs the Court to United States v. Palacios, 666 F. Supp. 113 (S.D. Tex. 1987),

where the good faith exception was applied to exclude evidence after police officers used a warrant

to arrest the wrong person.  In Palacios, police arrested Juan Palacios, Sr. with an arrest warrant for

Juan Palacios, Jr.  The defendant was not fully dressed and requested time to change clothes.  Police

---

[7]     The parties have not offered any evidence that the police lacked probable cause to execute
the warrant against Demarco Grayson, narrowing the issue to the reasonableness of the
police officer's conduct when executing the warrant.

6

followed Palacios to his bedroom and found a handgun in plain view. <u>Id</u>. at 114.  Police quickly

realized they had arrested the wrong person and released him, but seven months later Palacios was

indicted as a felon in possession of a firearm.  The court found that Palacios was arrested without

an arrest warrant and police had no basis to establish probable cause before the arrest.  The police

officers could not rely on the good faith exception, because they had an opportunity to look at a

verified description and photograph of the correct suspect before initiating the arrest.  Police even

looked at Palacios' drivers license and allegedly compared it to the information on the warrant, but

he was still placed under arrest.  Based on the totality of the circumstances, the court found that the

police acted unreasonably by arresting Juan Palacios, Sr.  <u>Id</u>. at 115.

Plaintiff relies on a similar case from the Western District of Tennessee, <u>United States v.</u>

<u>Kennedy</u>, 2006 WL 1083435 (W.D. Tenn. 2006).  In <u>Kennedy</u>, police executed an arrest warrant for

Antonio Kennedy based on information found in the NCIC database.  The officers searched

Kennedy incident to the arrest and found that Kennedy was carrying a handgun.[8]  The warrant

should have been issued for Brandon Kennedy, Antonio's brother, who was wanted as a suspect in

a murder investigation.  Brandon Kennedy had used his brother's identification while he was in

South Carolina, and police did not know Brandon Kennedy existed until their mistake was

discovered following the arrest of Antonio Kennedy.  The court found that police ordinarily rely on

the information in NCIC and had no reason to doubt the accuracy of the database.  Police actually

found the person whose name and identifying information matched the warrant, and could not have

realized their mistake until Antonio Kennedy disclosed the existence of his brother.  The court

---

[8]     Kennedy was charged as a felon in possession of a firearm in violation of 18 U.S.C. §
922(g), because police determined that he had a prior felony conviction.

applied the good faith exception and refused to suppress the firearm taken from Kennedy following his arrest.  The Court finds that <u>Kennedy</u> is clearly analogous to the present case.

In this case, the parties have stipulated that the police executed an arrest warrant on the wrong person, so the Court must decide whether the police acted reasonably under the circumstances when they arrested Demario Grayson instead of Demarco Grayson.  The Court finds that  McKenzie acted reasonably by arresting Grayson and that his mistake was understandable.   McKenzie reasonably relied on TRACIS to conclude that the municipal warrant was for Demario Grayson, and his arrest of Grayson was objectively reasonable with the information that McKenzie had in his possession.  Grayson asks the Court to find that the police had a duty to go beyond the information in the TRACIS database and locate a physical copy of the warrant.[9]  The Court rejects this argument, as McKenzie's testimony established the reliability of TRACIS and, similar to <u>Kennedy</u>, McKenzie had no basis to question the accuracy of the information provided by TRACIS.  In fact, when the attorneys for plaintiff and Grayson contacted the Tulsa municipal court prior to the suppression hearing to verify the name on the warrant, the clerk informed them the warrant was for <u>Demario</u> Grayson, this defendant.  The Court finds no duty of police officers to locate a physical copy of each and every warrant on which they rely for arrest when there is no factual basis to question the information provided by an reliable investigative tool.  Considering the totality of the circumstances, it was clearly reasonable for McKenzie to rely on TRACIS, and his mistake was understandable.

The Court finds that the drugs found during a search of Grayson's person should not be suppressed, because the good faith exception to the exclusionary rule applies in this case.  Grayson's

---

[9]     Defendant argues that McKenzie knew about the warrant for approximately two weeks before Grayson's arrest.  Defendant claims that under these circumstances McKenzie should have inquired into the validity of the warrant, because of the time lapse before the arrest.

arrest on the municipal warrant was a mistake, but it was a reasonable mistake under the facts of the case. The police had no reason to doubt the accuracy of the information provided by TRACIS, nor did the facts available to the police alert them to a need to verify the information. Grayson's motion to suppress on the basis that his arrest was invalid under the Fourth Amendment is denied.

### III.

Even if the Court were to assume that police acted unreasonably by arresting Grayson based on the warrant, the police had probable cause to arrest Grayson without a warrant. The Tenth Circuit follows that general rule that "an officer has probable cause to arrest if, under the totality of the circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." United States v. Brooks, 438 F.3d 1231 (10th Cir. 2006). A warrantless arrest must be based on probable cause to be lawful. United States v. Vasquez-Pulido, 155 F.3d 1213 (10th Cir. 1998). The CI's tip, combined with the personal knowledge of McKenzie and the information on the TRACIS database, was sufficient to establish probable cause.

The CI provided McKenzie with the correct location, description, and color of the car, and properly identified Ballard, Osborne, and Grayson as occupants of the vehicle. The address provided by the CI was Grayson's address. McKenzie had met Grayson, Ballard, and Osborne, and could identify the three men by sight. The tip stated that the three men in the car were gang members, which McKenzie verified with his own personal knowledge. As part of the ongoing investigation of Grayson, the CI had recently made a controlled buy from Grayson at his apartment, so there was a legitimate reason to believe the CI's tip that Grayson was selling drugs out of the car. TRACIS provided information about Grayson's prior felony convictions and the CI stated that

Grayson had a gun inside the white car.  Investigators verified the accuracy of the tip before police attempted to detain the suspects, and with the exception of one small detail, the tip was correct.[10] Police had sufficient objective information to believe that probable cause existed to arrest Grayson as a felon in possession, or at least constructive possession, of a firearm.[11]

Considering the totality of the circumstances before Grayson's arrest, police officers could have executed a warrantless arrest of Grayson.  See Jones v. United States, 362 U.S. 257, 270 (1960) ("we have held that [police] may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.").  The police confirmed the reliability of the CI's tip through on-site investigation and information obtained as part of the ongoing investigation of Grayson.  Even if Grayson were improperly arrested on the municipal warrant, the police had sufficient evidence to independently establish probable cause.[12]  Grayson's motion to suppress would be denied even if the good faith exception to the exclusionary rule were inapplicable.

---

[10]    The CI stated that three men were inside the car, instead of four.  This minor discrepancy does not detract from the reliability of the tip considering the totality of the circumstances, including the fact that the fourth person could have entered the vehicle between the tip and the arrival of police.

[11]    The Tenth Circuit has stated that a felon has constructive possession of a firearm when he "knowingly hold[s] the power and ability to exercise dominion and control over it."  United States v. Lopez, 372 F.3d 1207, 1211 (10th Cir. 2004).

[12]    The United States also argues that the police at least had reasonable suspicion to conduct a Terry stop of the vehicle, based on the CI's tip.  Alabama v. White, 496 U.S. 325 (1990); Terry v. Ohio, 392 U.S. 1 (1968).  Since the Court has found that probable cause for arrest existed, it is not necessary to reach this argument.

**IT IS THEREFORE ORDERED** that defendant's motion to suppress (Dkt. # 18) is **denied**.

**Dated** this 30th day of June, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT